FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Aug 05, 2019

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DENA M.[1], <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | No. 4:18-CV-5164-EFS <br><br> **ORDER RULING ON CROSS MOTIONS FOR SUMMARY JUDGMENT** |

Before the Court are the parties' cross motions for summary judgment, ECF Nos. 11 & 15. Plaintiff Deena M. appeals a denial of benefits by the Administrative Law Judge (ALJ).[2] She alleges the ALJ erred by (1) failing to classify Plaintiff's impairments as severe; (2) rejecting Plaintiff's subjective testimony; and (3) improperly weighing the opinions of her medical providers.[3] The Commissioner of Social Security asks the Court to affirm the ALJ's decision finding Plaintiff not disabled.[4] After reviewing the record and relevant authority, the Court grants

---

[1] To protect the privacy of social-security plaintiffs, the Court refers to them by first name and last initial. *See* LCivR 5.2(c). When quoting the Administrative Record in this order, the Court will substitute "Plaintiff" for any other identifier that was used.
[2] *See generally* ECF No. 11.
[3] *Id.*
[4] ECF No. 15.

ORDER RULING ON CROSS MOTIONS FOR SUMMARY JUDGMENT - 1

Plaintiff's Motion for Summary Judgment, ECF No. 11, and denies Defendant's Motion for Summary Judgment, ECF No. 15.

## I. Factual and Procedural Summary

Plaintiff was born on December 13, 1973.[5] Plaintiff protectively filed Titles II and XVI applications on August 5 and 6, 2014 alleging a disability onset date of January 28, 2014.[6] Plaintiff meets the insured status requirements through December 31, 2019.[7] Her claim was denied initially and upon reconsideration.[8] A video hearing was held on August 14, 2017, before Administrative Law Judge Jesse Shumway.[9]

At step one,[10] the ALJ determined that Plaintiff had not engaged in substantial gainful activity since January 28, 2014, the alleged onset date.[11]

At step two, the ALJ concluded that Plaintiff had the following medically determinable severe impairments: fibromyalgia, obesity, asthma, tendinitis of the left shoulder, and diabetes with peripheral neuropathy.[12] The ALJ also concluded that the following alleged impairments were not severe: cervical and lumber spine abnormalities, migraines, sleep apnea, optic neuritis, thyromegaly, acute cystitis, hypothyroidism, dyslipidemia, sinusitis, rhinitis, hypertension, irritable bowel syndrome, chest pain and palpitations, bilateral hand and wrist pain, post-traumatic stress disorder, memory loss, cognitive impairment, major depressive disorder, anxiety, and mental impairments.[13]

---

[5] AR 109.
[6] AR 15.
[7] AR 18.
[8] *Id.*
[9] *Id.*
[10] The applicable five-step disability determination process is set forth in the ALJ's decision, AR 16–17, and the Court presumes the parties are well acquainted with that standard process. As such, the Court does not restate the five-step process in this order.
[11] AR 18.
[12] *Id.*
[13] AR 18–21.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.[14]

At step four, the ALJ found that Plaintiff had the residual functional capacity to perform light work as defined in 20 CFR § 404.1567(b) and 416.967(b) except: she can only occasionally push, pull, and reach within her left upper extremity, she cannot climb ladders, ropes, or scaffolds; she can only occasionally climb ramps and stairs; she can only occasionally balance, stoop, kneel, crouch, and crawl; she cannot have concentrated exposure to extreme cold, heat, or vibration; and she cannot be exposed to hazards, including unprotected heights and moving mechanical parts.[15]

In reaching these conclusions, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms.[16] However, the ALJ concluded that Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record.[17]

In determining Plaintiff's RFC, the ALJ gave great weight to the opinion of Dr. Jay Toews and the State agency medical consultants, however, the ALJ gave only some weight to the opinion of the State agency psychological consultant, Dr. Renee Eienhower.[18] The ALJ gave partial weight to the opinion of Dr. William Drenguis.[19] He also assigned little weight to the opinions of Dr. Patrick Reilly, Dr. Jung Lim, and Dr. Payal Gaba.[20]

---

[14] AR 22.
[15] *Id.*
[16] AR 23.
[17] *Id.*
[18] AR 25.
[19] *Id.*
[20] AR 26.

1   At step five, the ALJ found Plaintiff was capable of performing past relevant work as a medical billing assistant and a customer service representative.[21]

The ALJ issued an unfavorable decision on August 25, 2017.[22] The Appeals Council denied Plaintiff's request for review,[23] and she timely appealed to this Court.[24]

## II. <u>Standard of Review</u>

A district court's review of the Commissioner's final decision is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited: the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error."[25] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[26]

It is the role of the ALJ, not this Court, to weigh conflicting evidence and make credibility assessments. If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record."[27] Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless."[28] An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination."[29] The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed.[30]

---

[21] AR 27.
[22] AR 30.
[23] AR 1–6.
[24] ECF No. 1.
[25] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).
[26] *Id.* at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).
[27] *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).
[28] *Id.*
[29] *Id.* at 1115 (quotation and citation omitted).
[30] *Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009).

### III. Applicable Law & Analysis

**A. The ALJ erred by failing to consider Plaintiff's alleged fatty liver disease impairment.**

Plaintiff argues that the ALJ erred at step two by failing to consider her fatty liver disease a "severe" impairment. The step two inquiry is a de minimis screening device to dispose of groundless or frivolous claims.[31] At step two, the ALJ must conclude whether a claimant suffers from a "severe" impairment or combination of impairments.[32] A "severe" impairment is one that has more than a slight effect on the claimant's ability to work.[33] The claimant must prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings.[34] The effects of all symptoms must be evaluated on the basis of a medically determinable impairment which can be shown to be the cause of the symptoms.[35] Once medical evidence of an underlying impairment has been shown, medical findings are not required to support the alleged severity of pain.[36]

The ALJ must also consider the combined effect of all of the claimant's impairments on his or her ability to function, without regard to whether each alone was sufficiently severe.[37] The combined effect shall be considered "throughout the disability determination process."[38] The adjudicator's role at step two is further explained by SSR 85–28:

> A determination that an impairment(s) is not severe requires a careful evaluation of the medical findings which describe the impairment(s) and an informed judgment about its (their) limiting effects on the

---

[31] *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citing *Bowen v. Yuckert*, 482 U.S. 137, 153–154 (1987));
[32] *Id.* (citation omitted).
[33] *Id.*
[34] 20 C.F.R. §§ 404.1521, 416.912.
[35] 20 C.F.R. §§ 404.1523, 416.923.
[36] *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991).
[37] 20 C.F.R. §§ 404.1523, 416.923.
[38] *Id.*

> individual's physical and mental ability(ies) to perform basic work activities; thus, an assessment of function is inherent in the medical evaluation process itself. At the second step of sequential evaluation, then, medical evidence alone is evaluated in order to assess the effects of the impairment(s) on ability to do basic work activities.
>
> ...
>
> If ... evidence shows that the person cannot perform his or her past relevant work because of the unique features of that work, a denial at the "not severe" step of the sequential evaluation process is inappropriate. The inability to perform past relevant work in such instances warrants further evaluation of the individual's ability to do other work considering age, education and work experience.[39]

The ALJ failed to evaluate—or even mention—Plaintiff's fatty liver disease, for which there is medical evidentiary support. Symptoms of fatty liver disease may include: a feeling of fullness in the middle or upper right side of the abdomen, abdominal pain, loss of appetite or weight loss, nausea, weakness, jaundice, swelling of the abdomen and legs, mental confusion, extreme fatigue, or tiredness.[40] Multiple doctors' reports show a diagnosis of fatty liver.[41] Her liver problems, including two focal nodular hyperplastia spots, are documented throughout the record.[42] Plaintiff began complaining of right abdominal pain in 2012, which prompted her medical providers to perform an ultrasound on her liver.[43] An ultrasound revealed two lesions.[44] The lesions progressed over time and Plaintiff was eventually diagnosed with fatty liver disease.[45] She continued to frequently report upper right abdominal

---

[39] SSR 85–28.
[40] *Fatty Liver Disease*, Cleveland Clinic, https://my.clevelandclinic.org/health/diseases/15831-fatty-liver-disease.
[41] *E.g.*, AR 533 (diagnosis of fatty liver, signed by Dr. Lee Stone); AR 819 (diagnosis of fatty liver signed by Dr. Romana Shehzadi); AR 824 (diagnosis of fatty liver, signed by Dr. John M. Gowdy).
[42] *E.g.*, AR 533, 539, 552, 629, 630, 767 & 811.
[43] AR 539.
[44] *Id.*
[45] AR 666 (January of 2013, new lesions on liver); AR 497–98 (June 2013, lesions had not worsened, but "liver [was] somewhat enlarged."); AR 471 (December 2013, lesions had diminished and demonstrated benign behavior); AR 530 (June 2014, "fatty liver" appeared as a diagnosis and Plaintiff was "given fatty liver handout."); AR 896–97 (September 2015, two new lesions noted); AR 915 (November 2016, lesions had increased in size and doctor prescribed a dedicated MRI of Plaintiff's liver ).

pain, fatigue, confusion, and nausea.[46] Thus, there is not the total absence of objective medical evidence necessary to preclude a step two finding of a "severe" mental impairment.[47]

Defendant argues that the ALJ did not need to consider Plaintiff's fatty liver disease because Plaintiff' did not specifically mention the term "fatty liver" in her application, nor did she specifically mention it at the administrative hearing.[48] Plaintiff's application lists few impairments by name—instead, she listed mostly symptoms.[49] One of those symptoms, was severe abdominal pain.[50] The ALJ is not permitted to ignore significant and probative evidence without explanation.[51] Given that there were a *substantial* number of records that clearly and specifically related to Plaintiff's liver issues, the ALJ had a duty to examine these records and consider whether Plaintiff's fatty liver was a severe impairment. Further, although Plaintiff did not use the specific diagnoses of mild obstructive sleep apnea, hypothyroidism, dyslipidemia, sinusitis, rhinitis, or hypertension, the ALJ evaluated each of those impairments.[52] Because the ALJ did not address whether Plaintiff's fatty liver was a severe impairment, the Court finds the ALJ erred at step two.

**B. The ALJ's error was not harmless.**

Having determined the ALJ erred at step two, the Court next must consider whether the error was harmless. The Court "may not reverse an ALJ's decision on

---

[46] *See, e.g.*, AR 355, 360, 378 & 383. Although the ALJ later discredited Plaintiff's testimony regarding the severity of her fatigue, pain, and confusion, the ALJ is "required to consider the claimant's subjective symptoms, such as pain or fatigue, in determining severity." *Smolen*, 80 F.3d at 1290 (citing SSR 88-13). At step two, the ALJ cannot discount Plaintiff's credibility based on the medical record evidence unless the record reveals inconsistency between Plaintiff's claimed symptoms and the medical record. *See Webb v. Barnhart*, 433 F.3d 683, 688 (9th Cir. 2005).
[47] *Webb*, 433 F.3d at 688.
[48]
[49] *See* AR 315 (Plaintiff lists memory loss, dizziness, impaired vision, diabetes II, and optic neuritis under "medical conditions"); *see also* AR 323 (Plaintiff lists "severe stomach pain/side pain constantly, severe diarrhea . . . shakiness, type II diabetes . . . " under "remarks").
[50] AR 323.
[51] *See Flores v. Shalala*, 49 F.3d 562, 571 (9th Cir. 1995).
[52] AR 18–19.

account of an error that is harmless."[53] An error is harmless "where it is inconsequential to the ultimate nondisability determination."[54] If the ALJ determines a severe impairment exists at step two, all medically determinable impairments must be considered in the remaining steps of the sequential evaluation.[55] When the ALJ accounts for limitations posed by an impairment later in the sequential evaluation, any error in failing to include the impairment at step two is harmless.[56]

As noted above, the ALJ resolved step two in Plaintiff's favor by finding she had severe impairments.[57] Defendant argues that all symptoms were accounted for. However, the Court cannot say that the ALJ accounted for every symptom associated with her fatty liver disease. There is no clear indication that he accounted for Plaintiff's allegedly severe abdominal pain, confusion, or nausea. Because the ALJ's RFC decision is devoid of any discussion of these symptoms, the Court cannot find the ALJ's error was harmless.[58]

C.  **Development of the record is likely necessary.**

The Court makes no opinion as to whether Plaintiff will be successful on remand. People with fatty liver disease may not exhibit any symptoms.[59] It is unclear which, if any, of Plaintiff's symptoms can be attributed to her fatty liver diagnosis.[60] Some of the medical evidence indicates a connection between Plaintiff's abdominal

---

[53] *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).
[54] *Id.* at 1115 (internal quotation marks omitted).
[55] *See Smolen*, 80 F.3d at 1290.
[56] *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).
[57] AR 18.
[58] *See Lewis*, 498 F.3d at 911.
[59] *Fatty Liver Disease*, Cleveland Clinic, https://my.clevelandclinic.org/health/diseases/15831-fatty-liver-disease.
[60] Defendant states that the record does not establish that Plaintiff's fatty liver disease caused significant work-related limitations, and lists reasons that the record does not support such a finding. ECF No. 15 at 3. However, the Court can evaluate the ALJ's decision only on the grounds articulated by the ALJ. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

pain and her fatty liver disease,[61] while other medical evidence indicates that Plaintiff's abdominal pain may not be connected to her fatty liver disease.[62] If an ALJ is unable to clearly determine "the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation process should not end with the not severe evaluation step. Rather, it should continue."[63] Since it is not clear from the record whether Plaintiff's symptoms can be fairly attributed to Plaintiff's diagnosis and what affect those symptoms may have on her daily activities, development of the record is likely appropriate.[64]

**D.    The Court will not address Plaintiff's remaining allegations of error.**

Plaintiff also claims that the ALJ erred in discounting her medical providers and Plaintiff's subjective testimony. If the ALJ determines that Plaintiff's fatty liver disease is severe, or severe in combination with other impairments, the ALJ may need to re-evaluate Plaintiff's credibility as well as the credibility of her medical providers. Further development of the record may also impact these analyses. Therefore, the Court need not address Plaintiff's remaining allegations of error.

## IV.    CONCLUSION

The Administrative Law Judge did not evaluate the effect, if any, of Plaintiff's fatty liver disease on her ability to work. Upon remand, all medically determinable impairments must be evaluated. If the ALJ cannot determine which symptoms may be fairly attributed to Plaintiff's fatty liver disease, and what effects those symptoms

---

[61] *See e.g.*, AR 819 (noting the diagnosis of fatty liver and stating "female presented for abnormal liver imaging . . . . She had [abdominal pain] in 2008, when she had imaging . . . intermittent [abdominal pain] which is sharp in nature and not associated with food. It is associated with nausea . . . . ).

[62] *See e.g.*, 503 (noting that the cause of Plaintiff's symptoms was unclear); AR 551 (noting that Plaintiff was frustrated because she did not know the cause of her abdominal pain); AR 850 (attributing severe abdominal pain to IBS).

[63] SSR 85-28.

[64] *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000); *see Smolen*, 80 F.3d at 1292 (concluding that the ALJ was required to determine whether a combination of impairments could have reasonably caused fatigue).

have on her ability to work, the ALJ shall further develop the record.[65] While the Plaintiff may not be successful in proving she is disabled, consideration of Plaintiff's fatty liver disease is necessary to determine whether Plaintiff is disabled as defined by the Social Security Act.

Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 11**, is **GRANTED**.
2. The Commissioner's Motion for Summary Judgment, **ECF No. 15**, is **DENIED**.
3. The Clerk's Office shall enter **JUDGMENT** for Plaintiff.
4. This matter is **REMANDED** to the Commissioner of Social Security for further proceedings consistent with this decision and sentence four of 42 U.S.C. § 405(g).
5. The case shall be **CLOSED**.

**IT IS SO ORDERED.** The Clerk's Office is directed to file this Order, enter Judgment for Plaintiff, provide copies to all counsel, and close the file.

**DATED** this 5th day of August 2019.

s/Edward F. Shea<br>
EDWARD F. SHEA<br>
Senior United States District Judge

---

[65] *Harman*, 211 F.3d at 1178; *see Smolen*, 80 F.3d at 1292.